**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

———————————————————————

No. 92-2291

———————————————————————

BILLY WAYNE WHITE,

Petitioner-Appellant,

VERSUS

JAMES A. COLLINS, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————————————
(April 21, 1992)

Before JOLLY, DAVIS and SMITH, Circuit Judges.

DAVIS, Circuit Judge:

Billy Wayne White is under a sentence of death and is scheduled for execution by the State of Texas on April 23, 1992. The district court rejected White's habeas petition and he seeks a certificate of probable cause (CPC) and stay of execution from this court. Because White has made no substantial showing of a denial of a federal right nor demonstrated a likelihood of success on the merits of his claims, we deny White's motions both for CPC and for stay of execution.

**I.**

On August 23, 1976, at approximately 6:00 p.m., White robbed the Right Price Furniture and Appliance store in Houston, Texas.

The owners of the store, Martha and Alge Spinks, were getting ready to close for the day when White entered. After looking over the merchandise, White indicated that he wanted to buy two lamps. Spinks asked his wife to write up the sales slip and the three of them proceeded to the office at the rear of the store. As they entered the office, White pulled a gun and demanded that they give him their money. Alge Spinks gave White his wallet and the store's receipts for the day. Then, without warning, White reached back and shot Martha Spinks in the face at point blank range. Spinks did not see or hear his wife do anything before White shot her.

After firing the fatal shot, White wheeled back around and shot again, this time hitting a desk. After ordering Spinks to open the safe, White had him lie on the floor. White went through the safe and then asked Spinks about his watch and whether his wife had any jewelry. Spinks informed him that he didn't know where his watch was and that his wife's watches and rings were on her arms. White put the gun on the floor with his foot on the barrel, told Spinks to "be still," and lifted Martha Spinks' arm to remove her jewelry. Spinks took this opportunity to grab the gun from under White's foot. During the scuffle that ensued, Spinks fired the gun twice, hitting White in the groin and emptying the gun. Spinks got up, ran from the building and hid behind his car. He shouted to Mack Alford, who worked across the street from the Spinks' store, asking him to call the police.

Alford heard gunfire and then saw White run from the alley between the Spinks' furniture store and the neighboring liquor

store.  White was hopping on one leg as he ran.  Almost immediately after hearing Spinks shouts for help, Alford flagged down a passing police car.  The officers broadcast on police radio a pickup bulletin based on Alford's description of the suspect.

Officers Neito and Sanford responded to the radio call.  When they were less than a minute's drive from the scene, an individual, matching the broadcasted description and identified at trial as White, walked into the intersection in front of their vehicle.  White was stopped.  The gun in his possession at this time was later found to have fired the bullet recovered from the office desk at the furniture store.  The police recovered $269.62 from White, an amount nearly identical to the day's receipts turned over to him by Spinks.

## II.

In October 1977, a Harris County, Texas jury found White guilty of the capital murder of Martha Laura Spinks.  At the punishment phase of the trial which followed, the jury answered affirmatively the two special issues submitted pursuant to the Texas Code of Criminal Procedure, art. 37.071, and White was sentenced to death.[1]  The Court of Criminal Appeals affirmed

---

[1]The jury answered the following special issues affirmatively:

(1)  Was the conduct of the Defendant that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased would result?

(2)  Is there a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

3

White's conviction and sentence on September 23, 1981. **White v. State**, 629 S.W.2d 701 (Tex. Crim. App. 1981). The United States Supreme Court denied certiorari on April 19, 1982. **White v. Texas**, 456 U.S. 938, 102 S. Ct. 1995 (1982).

White filed his first petition for habeas relief in state court on October 30, 1984. Following an evidentiary hearing, the trial court entered findings of fact and conclusions of law rejecting all relief on December 31, 1985. The Texas Court of Criminal Appeals denied White's habeas application in February 1990. White's second state habeas application was filed in April 1990. In January 1992, the presiding judge in the convicting court entered his findings of fact and conclusions of law rejecting all claims. The Court of Criminal Appeals in February 1992 also rejected relief and denied White's second state habeas application on the basis of the trial court's findings and conclusions. The trial court set White's execution for April 23, 1992. White filed his first federal habeas petition on April 5, 1992. White raised three claims including those raised in this appeal. The federal district court on April 15 filed a written opinion and order rejecting all of White's habeas claims and denying all relief. The district court also denied White's motion to stay his execution and denied a certificate of probable cause. White then filed a notice of appeal to this court and on April 17 filed an application for certificate of probable cause and for a stay of execution.

---

Vernon's Ann. Texas C.C.P. art. 37.071 (b), (1981).

## III.

### A.

Under Fed. R. App. P. 22(b), we will not grant a certificate of probable cause unless the habeas petitioner has made a substantial showing of the denial of a federal right. **Barefoot v. Estelle**, 463 U.S. 880, 103 S. Ct. 3383, 77 L.Ed.2d 1090 (1983); **Rault v. Butler**, 826 F.2d 299 302 (5th Cir.), **cert. denied**, 483 U.S. 1042, 108 S. Ct. 14 (1987). This requires the petitioner to "demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are `adequate to deserve encouragement to proceed further.'" **Barefoot**, 463 U.S. at 893 n.4, 103 S.Ct. at 3394 n.4, (*quoting* **Gordon v. Willis**, 516 F. Supp. 911, 913 (N.D. Ga 1980)) (emphasis in **Gordon**; brackets in **Barefoot**). Although in a capital case the court may properly consider the nature of the penalty in deciding whether to grant a certificate, "the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate." **Barefoot**, 463 U.S. at 893, 103 S.Ct. at 3395.

In reviewing an application for a stay of execution, the court must consider:

> (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of a stay would serve the public interest.

**Byrne v. Roemer**, 847 F.2d 1130, 1133 (5th Cir. 1988), (*quoting* **Streetman v. Lynaugh**, 835 F.2d 1521, 1524 (5th Cir. 1988)).

5

Although the movant in a capital case "'need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of equities [i.e. the other three factors] weighs heavily in favor of granting the stay.'" **Celestine v. Butler**, 823 F.2d 74, 77 (5th Cir.) (*quoting* **O'Bryan v. McKaskle**, 729 F.2d 991, 993 (5th Cir. 1987), **cert. denied**, 465 U.S. 1013, 104 S. Ct. 1015 (1984)), **cert. denied**, 483 U.S. 1036, 108 S. Ct. 6 (1987).

**B.**

Relying on **Franklin v. Lynaugh**, 487 U.S. 164, 108 S.Ct. 2320 (1988), and **Penry v. Lynaugh**, 492 U.S. 302, 109 S. Ct. 2934, 106 L.Ed.2d 256 (1989), White contends that the special issues established in the Texas statutory scheme impermissibly prevented the jury from considering and giving mitigating effect to his youth and provocation by the victim.

In **Penry**, the Supreme Court held that, where a capital defendant introduces evidence about his background, character, or circumstances of the offense that reflects a reduced personal culpability, and the jury cannot give effect to the mitigating force of that evidence in responding to Texas' statutory punishment phase issues, the trial court must, upon request, provide instructions which allow the jury to consider and give mitigating effect to such evidence. 492 U.S. at 319-328, 109 S.Ct. at 2947-2952.

6

However, our en banc opinion in **Graham v. Collins** makes it clear that **Penry** does not require that a sentencer be able to give effect to a defendant's mitigating evidence in whatever manner or to whatever extent the defendant desires.  "**Penry** does not invalidate the Texas statutory scheme, and [] **Jurek [v. Texas**, 428 U.S. 262, 96 S.Ct. 2950 (1976),] continues to apply, in instances where no major mitigation thrust of the evidence is substantially beyond the scope of the special issues." **Graham v. Collins**, 950 F.2d 1009, 1027 (5th Cir. 1992) (en banc), *petition for cert. filed*, (U.S. Mar. 9, 1992) (No. 91-7580); **see also** **Saffle v. Parks**, 494 U.S. 484, 492, 110 S.Ct. 1257, 1261-62, 108 L.Ed.2d 415, 426-27 (1990); **Cordova v. Collins**, 953 F.2d 167 (5th Cir. 1992), **stay denied**, ___ U.S. ___, **cert. denied**, ___ U.S. ___ (Jan. 21, 1992). Thus, where the jury is able to give effect to the major mitigating thrust of evidence in responding to the statutory punishment issues, the fact that a defendant can identify mitigating value beyond the scope of the statutory issues does not require the submission of an additional issue or instruction allowing the jury to give further mitigating effect to the evidence.  **Graham**, 950 F.2d at 1026-27, 1031 n.27; **Saffle**, 494 U.S. at 492, 110 S.Ct. at 1261, 108 L.Ed.2d at 426; **Boyde v. California**, 494 U.S. 370, 382 n.5, 110 S. Ct. 1190, 1199 n.5, 108 L.Ed.2d 316, 330 n.5 (1990) (The defendant is entitled only to a fair vehicle by which the sentencer can give effect to the mitigating force of his evidence.)

With this background, we now consider White's specific arguments that the Texas capital sentencing scheme as administered

7

in his case did not permit the jury to adequately consider the mitigating effect of (1) provocation by the victim and (2) his youth.

## 1.

The Texas capital sentencing scheme authorizes the court to submit a third special issue to the jury:

> (3)  if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Vernon's Ann. Texas C.C.P. art 37.071 (b), (1981).[2]  White did not request the court to propound the third issue to the jury.

White argues that because the third statutory punishment issue was not submitted to the jury, the jury was unable to give effect to the fact that the victim allegedly provoked her murder by spraying him with mace.  In findings and conclusions adopted by the Court of Criminal Appeals, the state trial court found that White was procedurally barred from challenging the trial court's failure to include the third special issue.  This was predicated on White's failure to request that the third special issue be propounded to the jury or object to the punishment charge which did not include this special issue.  At the time of trial, White was entitled to have the third statutory punishment phase issue submitted to the jury.  Therefore, his claim clearly does not come within Texas' "right not recognized" exception to the requirement that a

---

[2]Article 37.071 of the Texas Code of Criminal Procedure is cited above as it was in effect at the time of White's trial.  The article has since been amended, see Vernon's Ann. Texas C.C.P. art. 37.071 (Supp. 1991).

8

defendant comply with procedural rules for preserving alleged error for review. Cf. **Black v. State**, 816 S.W.2d 350 (Tex. Crim. App. 1991). The state courts' reliance on a procedural bar is consistent with state law.

The district court correctly concluded that the procedural default doctrine forecloses federal habeas review of this claim because the state court rejected it on the basis of his failure to comply with state procedural rules. The Texas Court of Criminal Appeals in denying White's requested relief expressly adopted the trial court's findings of fact and conclusions of law. Under these circumstances, "federal habeas review is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of the federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." **Coleman v. Thompson**, 501 U.S. ___, ___, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640, 669 (1991). White does not allege cause for his failure to comply with state procedural rules for preserving error nor has he demonstrated that he was prejudiced by the alleged constitutional violation.

We also agree with the district court's alternative rejection of this claim on the merits.[3] The only evidence at trial concerning mace was the testimony of Officer Lynn that he was at

_____

[3] Although the trial court addressed the merits of the federal claim as an alternative basis for denying relief, federal habeas review is nonetheless foreclosed by his "plain statement" or reliance on a state procedural bar. **Harris v. Reed**, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10, 103 L.Ed.2d 308, 318 n.10 (1989).

the scene of the crime a few minutes after the shooting and saw a small canister of what could have been mace in the hand of the deceased. There was no evidence that the victim sprayed White with mace or that White saw the canister in the victim's hand. Indeed, Alge Spinks testified that he didn't see or hear his wife do anything before White shot her. Spinks didn't see a canister of mace in his wife's hand, wasn't blinded during the robbery, and didn't smell anything unusual. Although White argues that the tears in his eyes when he sat in the back seat of the police vehicle following his apprehension were caused by mace, there was no evidence that he was crying as he ran from the scene or at the time of his apprehension. Moreover, the evidence showed that White was shot in the crotch during the scuffle with Spinks.

If the jury believed White shot Mrs. Spinks as a reflex after she sprayed him with mace, the jury was able to give effect to the mitigating value of this perception. First, it could have given effect to provocation by finding that ordinarily, absent such provocation, White would be nonviolent. Such an understanding of the evidence would support a negative response to the second issue on future dangerousness. Also, if the jury believed White discharged the gun accidentally or by reflex action because he was suffering from the caustic effect of mace, as he now hypothesizes, the jury could have responded to this evidence in two additional ways. The jury could have answered "no" to the deliberateness inquiry of the first punishment phase issue. It could have also determined at the guilt-innocence phase of the trial that White had

no intent to kill.  In fact, White's defense attorney made this argument to the jury at the guilt-innocence phase of the trial. The special issues submitted to the jury thus provided an adequate vehicle for the jury to respond to the mitigating effect of the alleged provocation by the victim.

<em>2.</em>

White also argues that the Texas special issues did not allow the jury to give effect to the mitigating aspect of his youth at the time of the offense.  At the time of the offense, White was two months away from his twentieth birthday.  We agree with the district court that this claim should be rejected on the merits.[4] The first and second statutory punishment issues (on deliberateness and future dangerousness) provided a constitutionally adequate vehicle by which the jury could give mitigating effect to White's youthful age.  "To the extent that [a defendant's] criminal conduct was a product of his youth he was for that reason not only less culpable but, to the same extent, also less likely to be dangerous when no longer young."  **Graham v. Collins**, 950 S.W.2d 1009, 1031 (5th Cir. 1992) (en banc).

**CONCLUSION**

We conclude that White has not made a substantial showing of the denial of a federal right, **Barefoot v. Estelle**.  We therefore deny his application for certificate of probable cause.  We also conclude that he has failed to make a showing of a likelihood of

---

[4]Although this aspect of the **Penry** claim is arguably procedurally barred, we do not rest our decision on this ground.

11

substantial chance of success on the merits, **Byrne v. Roemer**.  We therefore deny White's application for a stay of execution.