**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 97-50312**
_____


**LEOPOLDO NARVAIZ, JR.,**

**Petitioner-Appellant,**

**versus**

**GARY L. JOHNSON, DIRECTOR,**
**TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

_____

**Appeal from the United States District Court**
**for the Western District of Texas**

_____

January 30, 1998

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Leopoldo Narvaiz, Jr., in 1988 convicted in Texas state court of capital murder and sentenced to death, appeals the denial of federal habeas relief, claiming two errors in sentencing: (1) the voluntary intoxication jury instruction, pursuant to TEX. PENAL CODE § 8.04(b), is unconstitutional, facially and as applied, because it prohibits the jury from considering mitigating evidence of voluntary intoxication unless the intoxication rises to the level of temporary insanity; and (2) TEX. CODE CRIM. PROC. ART. 37.071(f) is

unconstitutional as applied because it prevents the jury from weighing the mitigating evidence of provocation by a victim other than the first person named in the indictment. We **AFFIRM** and **VACATE** the stay of execution.

I.

Narvaiz was convicted by jury in 1988 of the offense of capital murder for stabbing and bludgeoning to death Ernest Mann, Jr., age 11, while also murdering Ernest Mann's three older sisters, Martha, Shannon, and Jennifer Mann, ages 15, 17, and 19, respectively, in their home in Bexar County, Texas. The horrific evidence presented in the state criminal trial is accurately detailed in the opinion of the Texas Court of Criminal Appeals on direct appeal. *See Narvaiz v. State*, 840 S.W.2d 415, 420-23 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 975 (1993).

Briefly restated, Narvaiz had dated Shannon Mann for several years until she broke off the relationship in February 1988. The next month, Narvaiz approached Shannon Mann and her boyfriend, Ricky Moore, with a knife and a pipe, smashed the windows of Moore's truck, and stated to Shannon's mother that "if he wasn't going to be able to have [Shannon], nobody else was going to". *Id.* at 420-21.

In the early morning hours of 15 April 1988, the police received and recorded a "911" telephone call in which the caller, later identified as Shannon Mann, stated: "My boyfriend just beat

us up.  He's killed my little sister".  *Id.* at 421.  When the police arrived at the Mann residence, they found all four of the Mann siblings stabbed to death.  Ernest Mann, Jr., had been stabbed 63 times.  *Id.*  A knife containing Narvaiz' thumbprint was found in the yard of the residence and the police soon arrested Narvaiz at a friend's house.

Two days after the arrest, Narvaiz signed a written confession in which he admitted the killings, but asserted that he was under the control of cocaine at the time and that Jennifer Mann first stabbed him in the leg, after which he "just went crazy".  *Id.* at 422-23.

The day following conviction, the jury affirmatively answered two Texas capital sentencing special issues as to: (1) deliberateness and expectation of death; and (2) continuing threat to society.  As a result, Narvaiz was sentenced by the trial court to death by lethal injection.

In 1992, the Texas Court of Criminal Appeals affirmed the conviction and sentence; and, in 1993, the Supreme Court of the United States denied certiorari.  *Id*.  The trial court scheduled execution for 23 April 1993.

Narvaiz, with the assistance of the Texas Resource Center, filed in district court a motion for appointment of counsel, a motion for stay of execution, and an abbreviated habeas petition.  That court stayed execution and appointed counsel.  Narvaiz filed

his amended federal habeas petition in late 1993. The district court, in early 1994, granted the State's motion to dismiss the petition, without prejudice, for failure to exhaust state remedies. *Narvaiz v. Collins*, No. SA-93-CA-0311 (W.D. Tex. Feb. 8, 1994). The trial court scheduled execution for 6 June 1994.

On 1 June 1994, Narvaiz filed a *pro se* state habeas application, incorporating by reference the grounds for relief raised in federal court. Following appointment of counsel and a new execution date of 12 October 1994, Narvaiz' counsel filed an amended application, but refused to present supporting evidence, seeking instead the appointment of a private investigator to assist in developing claimed newly-discovered grounds for relief. On 3 October 1994, the Texas Court of Criminal Appeals denied Narvaiz' state habeas claim. *Ex parte Narvaiz*, No. 27,215-01, at 161 *et seq*. (Tex. Crim. App. Oct. 3, 1994).

Three days later, the same district court that had been presented with Narvaiz' first federal habeas application appointed the same counsel who had represented Narvaiz in the previous federal habeas proceeding, granted a stay of execution, and set a deadline for filing a federal habeas petition. In January 1995 Narvaiz filed a "corrected" petition, listing 22 grounds for relief. Two months later, the district court denied the State's motion to dismiss for failure to exhaust state remedies, stating among its reasons the need to prevent Narvaiz from manipulating the

system through intentionally filing non-exhausted claims in district court, thus postponing in perpetuity a determination on the merits by the district court and, as a result, execution of sentence.

In mid-March 1997, the district court, after considering all 22 grounds for relief and reviewing more than 6000 pages of record, filed an 190-page opinion, denying habeas relief and lifting the stay of execution. *Narvaiz v. Johnson*, Civil No. SA-94-CA-839, at 12-13 (W.D. Tex. Mar. 17, 1997). Narvaiz filed a notice of appeal, which was deemed timely filed. The state court set execution for 15 October 1997.

On 21 August 1997, our court issued an administrative directive to the district court to determine whether Narvaiz was entitled to a certificate of probable cause to appeal (CPC). That court determined that only one of Narvaiz' claims satisfied that standard. However, it denied Narvaiz' motion for stay of execution, in part because "there is no reasonable likelihood that the Fifth Circuit will rule favorably to petitioner on [the claim which was granted CPC]". We granted a stay of execution, denied counsel's motion to withdraw, and set an expedited briefing schedule.

## II.

Narvaiz presents two issues. Both issues attack the constitutionality of the jury instructions at the sentencing phase:

the first, contends that the jury charge was unconstitutional due to an instruction that was included; the second, that an instruction was excluded.

The first contention is based on the voluntary intoxication jury instruction given to the jury, pursuant to TEX. PENAL CODE § 8.04(b), which included the following: "Evidence of temporary insanity caused by intoxication should be considered in mitigation of the penalty attached to the offense". Narvaiz contends that this instruction was unconstitutional because it prohibited the jury from considering mitigating evidence of voluntary intoxication that did not rise to the level of such temporary insanity.

The second contention is based on the trial court's refusing an instruction on provocation by a victim other than the first named in the indictment. This contention involves TEX CODE CRIM. PROC. ART. 37.071, which provides that a provocation instruction shall be submitted "only with regard to the conduct of the defendant in murdering the deceased individual first named in the indictment". Narvaiz contends that this statute is unconstitutional as applied because it prevents the jury from weighing the mitigating effect of the alleged provocation by Jennifer Mann, noted *supra*.

The first issue, concerning voluntary intoxication, was the sole issue found by the district court to satisfy the standards for CPC. The second issue, concerning provocation, was not mentioned

as satisfying those standards. But, unlike the certificate of appealability under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2253(c) (as amended), a grant of CPC on a single issue allows Narvaiz to raise other issues on appeal. 28 U.S.C. § 2253 (prior to 1996 amendment); *see **Sherman v. Scott***, 62 F.3d 136, 138-39 (5th Cir. 1995).

## A.

During the sentencing phase, the trial court, pursuant to TEX. PENAL CODE § 8.04(b), directed the jury to consider evidence of Narvaiz' voluntary intoxication as mitigating evidence *only* if it determined that the intoxication amounted to temporary insanity. That section provides: "Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried". TEX. PENAL CODE § 8.04(b).

The sentencing charge contained, in pertinent part, the following:

> You are instructed that under our law neither intoxication nor temporary insanity of mind caused by intoxication shall constitute any defense to the commission of crime. *Evidence of temporary insanity caused by intoxication should be considered in mitigation of the penalty attached to the offense.*
>
> By the term "intoxication" as used herein, is meant disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

- 7 -

By the term "insanity" as used herein, is meant that as a result of intoxication the defendant did not know that his conduct was wrong.

Now if you find from the evidence that the defendant, Leopoldo Narvaiz, Jr., at the time of the commission of the offense for which he is on trial, if you find from the evidence beyond a reasonable doubt that he did commit such offense, was laboring under *temporary insanity as defined in this charge, produced by voluntary intoxication*, then you may take such temporary insanity into consideration in mitigation of the penalty which you attach to the offense.

(Emphasis added.)

But, that charge also stated:

You are further instructed that in determining each of these [two] special issues [as to deliberateness and continuing threat to society] *you may take into consideration all of the evidence* submitted to you in the full trial of the case, that is, all of the evidence submitted to you in the trial of the first part of this case wherein you were called upon to determine the guilt or innocence of the defendant, and all of the evidence, if any, admitted before you in the second part of the trial wherein you are called upon to determine the special issues hereby submitted to you. *Evidence to be considered shall include but not be limited to aspects of the defendant's character and background and the facts and circumstances of the offense.*

(Emphasis added.)

At trial, Narvaiz did not object to the § 804(b) instruction; nor did he raise it as an issue in his direct appeal. On the other hand, he did raise this issue in his state habeas proceeding. In

- 8 -

that regard, the state court did not apply a procedural bar and the State does not urge that bar here. Accordingly, because the State does not raise the issue of a procedural bar, we address the merits, as did the district court.[1] *See **Trest v. Cain**,* ___ U.S. ___, 118 S. Ct. 478, 480 (1997) ("A court of appeals is not 'required' to raise the issue of procedural default sua sponte.").

---

[1]     Moreover, the State does not contend that the district court erred in its decision not to dismiss for lack of exhaustion of state remedies.  In denying the motion to dismiss for lack of exhaustion, the district court held:

> [T]he dismissal of this federal habeas corpus proceeding based on petitioner's inclusion of unexhausted claims in this, his second, federal habeas corpus petition not only sets a bad precedent but also does nothing to preclude petitioner from effectively preventing the State of Texas from ever carrying out petitioner's sentence. Unless and until this or some other federal court addresses the merits of petitioner's claims for federal habeas relief, there is absolutely nothing to prevent petitioner from continuing to file requests for stays of execution and for appointment of counsel and to then file a federal habeas petition containing unexhausted claims for relief, waiting for the court to dismiss same without prejudice, and then start the process all over again.

Order and Advisory, at 9-10 (filed Mar. 10, 1995).

Of course, exhaustion is not a jurisdictional requirement, but rather a matter of comity.  ***Rose v. Lundy***, 455 U.S. 509, 515 (1982).  Therefore, the State may waive the exhaustion issue by not asserting it as a defense.  ***McGee v. Estelle***, 722 F.2d 1206, 1211-14 (5th Cir. 1984) (en banc).  In the instant case, the State moved to dismiss for lack of exhaustion in the district court but does not urge here that the district court erred in denying that motion. Accordingly, we need not address the decision to deny that motion.

- 9 -

And, although federal courts generally defer to state court findings in habeas proceedings, the district court, "out of an abundance of respect for petitioner's constitutional rights" and as a result of cursory analysis in the state court habeas decisions, declined to defer to those findings and conducted a *de novo* review of Narvaiz' grounds for relief. ***Narvaiz***, Civil No. SA-94-CA-839, at 56-57 n.128.

"The proper standard for reviewing a challenged jury instruction in the capital sentencing context is 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.'" ***Drinkard v. Johnson***, 97 F.3d 751, 757 (5th Cir. 1996) (quoting ***Boyde v. California***, 494 U.S. 370, 380 (1990)), *cert. denied*, ___ U.S. ___, 117 S. Ct. 1114 (1997). "This 'reasonable likelihood' standard does not require the petitioner to prove that the jury 'more likely than not' interpreted the challenged instruction in an impermissible way; however, the petitioner must demonstrate more than 'only a possibility' of an impermissible interpretation." ***Id.*** Of course, the challenged instructions must be analyzed within the context of the overall jury charge. ***Cupp v. Naughten***, 414 U.S. 141, 146-47 (1973). "In evaluating the instructions, we do not engage in a technical parsing of this language of the instructions, but instead approach the instructions in the same way that the jury would —

with a 'commonsense understanding of the instructions in the light of all that has taken place at the trial.'" *Johnson v. Texas*, 509 U.S. 350, 368 (1993) (quoting *Boyde*, 494 U.S. at 381).

Narvaiz concedes that his contentions concerning this issue are directly in conflict with *Drinkard*, 97 F.3d at 751, and *Lauti v. Johnson*, 102 F.3d 166, 169 (5th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 2525 (1997). The pertinent facts and sentencing-phase charge in the instant case are essentially identical to those in *Drinkard* and *Lauti*, in which our court held that the § 8.04(b) instruction did not deprive the defendant of his constitutional rights. Both *Drinkard* and *Lauti* concluded that the general instruction, quoted above, to consider "all of the evidence" admitted at trial negates any inference that the § 8.04(b) instruction precluded consideration of evidence of non-insane, voluntary intoxication. *Drinkard*, 97 F.3d at 764; *Lauti*, 102 F.3d at 169-70.

The State relies on *Drinkard* and *Lauti*, contending, *inter alia*, that, even if the jury inferred that the § 8.04(b) instruction prohibited considering non-insane, voluntary intoxication as a mitigating factor, the general instruction provided it with an opportunity to consider any relevant mitigating evidence; and that the § 8.04(b) instruction is logically relevant only to the first special issue (deliberateness), not the second (continuing threat to society), *see Drinkard*, 97 F. 3d at 761.

Narvaiz seeks shelter, *inter alia*, under the dissent in **Drinkard**, which noted that a permissible general instruction does not cure specific language in an instruction that is otherwise unconstitutional. 97 F.3d at 774 (Emilio M. Garza, J. dissenting) (citing **Francis v. Franklin**, 471 U.S. 307 (1985)). And, he analogizes to **Eddings v. Oklahoma**, 455 U.S. 104 (1982), in which the Court held that the sentencer in a capital murder case cannot be precluded, as a matter of law, from considering mitigating evidence. Narvaiz distinguishes the Court's holding in **Johnson v. Texas**, 509 U.S. 350 (1993), that the defendant's youth was implicitly considered by the jury in the answers to the Texas special instructions, on the basis that, in the instant case, the jury was expressly instructed *not* to consider a mitigating factor.

**Drinkard** and **Lauti** control. It is more than well-established that, "[i]n this circuit, one panel may not overrule the decision, right or wrong, of a prior panel in the absence of en banc reconsideration or superseding decision of the Supreme Court." **Batts v. Tow-Motor Forklift Co.**, 978 F.2d 1386, 1393 n.15 (5th Cir. 1992) (quoting **Burlington N. R.R. v. Brotherhood of Maintenance of Way Employees**, 961 F.2d 86, 89 (5th Cir. 1992), *cert. denied*, 506 U.S. 1071 (1993)) (citations and internal quotations omitted). Accordingly, this claim is foreclosed by circuit precedent.

B.

Narvaiz maintains that TEX. CODE CRIM. PROC. ART. 37.071(f) is unconstitutional as applied, asserting that it prevents the jury from weighing the mitigating evidence of provocation by a victim other than the first person named in the indictment. At the time of Narvaiz' trial, TEX. CODE CRIM. PROC. ART. 37.071 provided in relevant part:

> (b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:
>
> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectations that the death of the deceased or another would result;
>
> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
>
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.
>
> * * *
>
> (f) If a defendant is convicted of an offense under section 19.03(a)(6), Penal Code, the court shall submit the three issues under Subsection (b) of this article only with regard to the conduct of the defendant in murdering the deceased individual first named in the indictment.

As noted, and pursuant to this provision, the district court gave the following instruction at the sentencing phase, invoking the first two special issues:

SPECIAL ISSUE NO. I

Was the conduct of the defendant that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of Ernest Mann, Jr., would result?

SPECIAL ISSUE NO. II

Is there a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

Narvaiz' written confession, introduced at trial by the State, included the following: "[Jennifer Mann] got a knife and stabbed me in the leg. She tried to stab me again and I tried to stop her when she stabbed my hand. Then I just lost it.... I just went crazy." As arguable support of this statement, the trousers Narvaiz was wearing at the time of the incident were cut in a location corresponding to a wound on his leg.

Accordingly, Narvaiz requested that the trial court submit the third special issue, concerning whether the defendant's conduct was in response to provocation by the victim. The court refused, following the State's contention that, *inter alia*, the special issue was inapplicable because it applied only with respect to the victim first named in the indictment, Ernest Mann, Jr., and no evidence had been produced that he had provoked Narvaiz.

The provocation instruction, as provided in TEX. CODE CRIM. PROC. ART. 37.071, is invoked only "if raised by the evidence". Narvaiz does not dispute the State's contention that there is no evidence of provocation by Ernest Mann, Jr. Instead, Narvaiz contends that

- 14 -

the evidence produced at trial, such as his written confession, provide sufficient evidence of provocation by Jennifer Mann, who is not first named in the indictment.

Narvaiz did not raise this issue on direct appeal. *See Narvaiz v. State*, 840 S.W.2d 415 (Tex. Crim. App. 1992). However, he did raise it in his state habeas proceedings. As was the case for the other issue in this appeal, the state court did not apply a bar, and the State does not urge one here. For the reason stated *supra,* we find no procedural bar. **Trest**, 118 S. Ct. at 480.

Narvaiz contends that the trial court's failure to provide the provocation instruction constituted various constitutional violations. Although these claims are somewhat convoluted, they can be grouped roughly as the following: (1) violation of the Separation-of-Powers Clause of the Texas Constitution; (2) violation of the Eighth and Fourteenth Amendments, because the jury was not allowed to consider constitutionally relevant mitigating evidence and the jury's verdict is incomplete; (3) violation of the Eighth and Fourteenth Amendments, because Narvaiz did not have the benefit of the narrowing scheme created by the Texas legislature; and (4) violation of the Ex Post Facto Clause, because the trial court failed to comply with a statute in effect at the time he committed the crime. The State maintains that all but one of these sub-issues were not presented to the district court. After reviewing Narvaiz' "corrected" petition before the district court,

we conclude, although *dubitante*, that all of them were adequately presented.

1.

As for the claim that the refusal to give the third special issue violated the Texas Constitution, and as stated in the district court opinion, claims that the trial court improperly applied state law do not constitute an independent basis for federal habeas relief. ***Estelle v. McGuire***, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law'") (quoting ***Lewis v. Jeffers***, 497 U.S. 764, 780 (1990)). Needless to say, a 28 U.S.C. § 2254 applicant must claim violation of a federal constitutional right. ***Id.***; ***West v. Johnson***, 92 F.3d 1385, 1404 (5th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 1847 (1997).

2.

Next, Narvaiz contends that the refusal to submit the provocation special issue violated his Eighth and Fourteenth Amendment rights because it denied the jury the opportunity to consider relevant mitigating evidence that Jennifer Mann, who is not first named in the indictment, provoked him. Narvaiz relies upon ***First v. State***, 846 S.W.2d 836 (Tex. Crim. App. 1992), which held ART. 37.071(f) unconstitutional as applied, because the court failed to submit an instruction on provocation by a victim other than the one first named in the indictment. The State points out

- 16 -

that the holding in *First* is distinguishable from the immediate case because *First* is premised upon, *inter alia*, an instruction that contained "an inclusive list of mitigating circumstances", which excluded provocation by one of the victims. *Id.* at 841.

Narvaiz asserts that, per *First*, the provocation special issue is "the sole vehicle within the death-sentencing scheme for the jury's consideration of mitigating evidence of provocation by the decedents", and that he has "an automatic entitlement under the Eighth Amendment" to have it presented to the jury.

But, as stated in Narvaiz' brief, the construction of the third special issue in *First* "is a matter of state law". As such, it does not constitute an independent basis for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *West v. Johnson*, 92 F.3d at 1404.

The State asserts also that Narvaiz' claim concerning the failure to submit the provocation issue is foreclosed by circuit precedent. *Vuong v. Scott*, 62 F.3d 673, 676 (5th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 557 (1995). In *Vuong*, our court denied relief on a claim essentially identical to Narvaiz' because it would have constituted a retroactive application of a new rule of constitutional law in contravention of *Teague v. Lane*, 489 U.S. 288 (1989). *Vuong*, 62 F.3d at 676-82. Moreover, our court held that the first two special issues under ART. 37.071 allowed the jury to consider evidence of provocation by a victim other than the

first named in the indictment. *Id.* at 682. We find persuasive the State's contention that *Vuong* precludes this issue; but, out of an abundance of caution, we address the merits of Narvaiz' contentions.

Obviously, the Eighth and Fourteenth Amendments do not require that a defendant's mitigating evidence be given effect in the manner and extent the defendant wishes. *White v. Collins*, 959 F.2d 1319, 1322 (5th Cir.), *cert. denied*, 503 U.S. 1001 (1992). All that is required is that the jury be afforded one adequate vehicle to consider the mitigating evidence. *Id.* at 1322-23. The State may "structure" the way a jury considers such evidence. *Rogers v. Scott*, 70 F.3d 340, 343 (5th Cir. 1995) (citation omitted).

Under the two special issues presented at the sentencing phase, the jury was afforded an opportunity to consider the mitigating evidence that Jennifer Mann's alleged attack provoked Narvaiz. For example, it could have decided that an attack, if any, by Jennifer Mann had caused a violent response by Narvaiz that was not deliberate, thus affecting the finding under the first special sentencing issue. Similarly, the jury, when considering the second special sentencing issue, could have found that Narvaiz' murders of the four Mann children resulted because he was attacked and stabbed by Jennifer Mann and not because he has a propensity for violence that poses a continuing threat to society. Accordingly, we agree with the district court that there was no

Eighth Amendment violation because the two special issues provided an adequate vehicle for the jury to consider the mitigating effects of Narvaiz' evidence of the claimed provocation by Jennifer Mann.

Narvaiz contends also that these constitutional rights have been violated because "the jury's sentencing verdict to date remains incomplete" and, therefore, we must reverse his sentence as well as his capital murder conviction. Although Narvaiz appears to state this as a separate argument, the analysis is essentially indistinguishable from that in the above unsuccessful contention.

3.

In a similar vein, Narvaiz contends that his Eighth and Fourteenth Amendment rights were violated by the refusal to give the provocation special issue because the jury was precluded from determining whether Narvaiz belonged in the class of capital murderers who were ineligible for the death penalty under the statutory "narrowing" scheme created by the Texas legislature. He asserts that the trial court violated his "constitutionally-protected 'liberty interest' in the submission of the third statutory special issue" in violation of the Due Process Clause.

Narvaiz bases this contention on *Hicks v. Oklahoma*, 447 U.S. 343, 346-47 (1980), which found a due process violation when a state appellate court re-imposed the defendant's original 40-year sentence, even though the sentence was premised upon a state statute that later had been declared unconstitutional and, without

which, the sentence would have been ten years.  Aside from the obvious factual differences between *Hicks* and the instant case, *see* *Narvaiz v. State*, Civil No. SA-94-CA-839, at 109 (W.D. Tex. Mar. 17, 1997), Narvaiz' claim does not satisfy the *Hicks* standard.  A defendant claiming a due process violation under *Hicks* must establish: (1) the sentencing authority either (a) did not make the sentencing decision or (b) lacked knowledge of the available range of sentencing discretion under state law, and (2) a "substantial possibility" of resulting prejudice to the defendant.  *Dupuy v. Butler*, 837 F.2d 699, 703 (5th Cir. 1988).

The jury was instructed on the range of sentencing under state law and Narvaiz' sentence was properly based on its answers to the two special issues.  Narvaiz has failed to demonstrate a violation under *Hicks*.

4.

Finally, Narvaiz contends that the refusal to submit the provocation special issue violated the Ex Post Facto Clause of the United States Constitution because it deprived him of a viable defense available at the time of the crime.

A violation of that clause occurs when a statute retroactively affects a criminal defendant by:  (1) criminalizing conduct that was not criminal at the time of the conduct; (2) increasing the punishment for a crime already committed; or (3) depriving a defendant of a viable defense available at the time that the crime

- 20 -

was committed. ***Wilson v. Lensing***, 943 F.2d 9, 10-11 (5th Cir. 1991). The well-settled state law prior to the commission of Narvaiz' crime was that the provocation special issue should be presented only if there is evidence of provocation by the victim first named in the indictment. ***Marquez v. Collins***, 11 F.3d 1241, 1248 (5th Cir. 1994). As stated *supra*, the two special issues permitted the jury to consider provocation, if any, by Jennifer Mann. The Ex Post Facto Clause was not violated.

III.

For the foregoing reasons, we **AFFIRM** the denial of habeas relief and **VACATE** our order staying execution.

***AFFIRMED; STAY VACATED***