# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-70018

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2014

Lyle W. Cayce
Clerk

KENT WILLIAM SPROUSE,

Petitioner–Appellant,

versus

WILLIAM STEPHENS, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

A jury found Kent Sprouse guilty of the capital murder of a police officer, and he was sentenced to death. Among many other issues raised on direct appeal and on state habeas corpus review, Sprouse challenged the jury instructions given during the guilt phase of his trial. He claimed that the instructions, in violation of the Eighth Amendment, effectively precluded the

No. 13-70018

jury from considering voluntary intoxication as mitigating evidence. The Texas Court of Criminal Appeals ("TCCA") rejected that argument. On federal habeas review, Sprouse contends that the state court unreasonably applied *Penry v. Lynaugh* ("*Penry I*"), 492 U.S. 302 (1989), *Boyde v. California*, 494 U.S. 370 (1990), and *Penry v. Johnson* ("*Penry II*"), 532 U.S. 782 (2001). We disagree and affirm the denial of the habeas petition. We also decline to grant a certificate of appealability ("COA") on any of the additional issues Sprouse raises.

## I.

In 2002, Sprouse entered a convenience store with a shotgun hung over his shoulder and, after returning to his vehicle, fired his weapon in the direction of two men. Then another customer saw Sprouse working on his vehicle and Pedro Moreno, yet another customer, filling his truck with gas. The customer noticed Sprouse attempting to speak to Moreno, who did not respond. Sprouse then reached into his vehicle, pulled out a gun, and shot and killed Moreno.

Officer Harry Steinfeldt, dressed in uniform and driving a police vehicle, responded to the shooting. When he arrived, before turning toward Sprouse's car, he noticed Moreno on the ground. As he turned, Sprouse shot him twice. Steinfeldt returned fire but died from his injuries. A second officer arrived and took Sprouse into custody. Sprouse was transported to a nearby hospital, where a doctor thought he was under the influence of drugs. Testing revealed he had consumed amphetamines, methamphetamines, and cannabis within the past forty-eight hours.

Sprouse was indicted for capital murder of a police officer. His lawyer filed notice of intent to present an insanity defense. The issue of intoxication—both as an affirmative defense and as mitigating evidence—was raised with several potential jurors during *voir dire*. Specifically, the prosecutor

No. 13-70018

questioned two jurors who were chosen—Ruby Martinez[1] and Kathy Wilson[2]—on that issue.  Sprouse, however, did not object to that questioning.  Defense counsel discussed the issue of intoxication with Martinez but not Wilson.

---

[1] The prosecutor discussed with Martinez the possibility of voluntary intoxication as a defense and as mitigating evidence:

[Prosecutor]: [E]ven if a defendant showed you that his conduct was wrong, that doesn't mean that he prevails on his insanity defense.  And that leads into another area of law . . . concerning voluntary intoxication.  And in our questionnaire we advise you that voluntary intoxication is not a defense to crime.  Do you agree with that?

[Martinez]: Yes.

[Prosecutor]: All right.  And so no matter how much evidence was produced that a person was intoxicated or why they did what they did while they were intoxicated has nothing to do with their guilt of the crime charged.

. . . .

[Prosecutor]: Right.  Now, the law does allow a defendant to introduce evidence of intoxication at punishment as mitigation, okay, but only in a certain circumstance; and that is, a defendant has to show that he was intoxicated at the time of the conduct charged and that the intoxication resulted in his not knowing his conduct was wrong.  Okay?

[2] [Prosecutor]: Someone takes a substance into their body who becomes so intoxicated they simply don't know their conduct is wrong.  That's a situation in the law known as temporary insanity.  And that is completely different from the insanity defense.  Our law says that a person who is voluntary—who—that voluntary intoxication is not a defense to crime.  And I believe in your jury questionnaire you agreed with that law?

[Wilson]: Uh-huh.

[Prosecutor]: . . .  Where intoxication or voluntary intoxication can be presented to the jury is on the issue of punishment.  And the law says that while it's not a defense to [the] crime[, ] intoxication which results in a defendant not knowing their conduct is wrong can be used by the jury in mitigation of punishment, to lessen the punishment.  Doesn't say they have to use it.  It, again, is just like any other mitigating evidence in a case.  It's only mitigating if you think it's mitigating and the result of the jury thinks it's mitigating. . . . Would you require—before considering voluntary intoxication as any mitigation of punishment, would require a defendant to prove that that intoxication resulting in their not knowing their conduct was wrong?

[Wilson]: Would I require them to prove that they were so intoxicated—

[Prosecutor]: Would you—would you require that finding . . .

[The Court]: Preface it if the law stated this . . . could she follow that?

[Prosecutor]: If the law states that voluntary intoxication can be used in mitigation of punishment if the jury finds that the voluntary intoxication resulted in the defendant

No. 13-70018

At the close of the guilt phase, the jury was instructed on insanity[3] but rejected that defense and convicted Sprouse of capital murder. At the punishment phase, Sprouse put forward no new evidence, instead relying on all the testimony and evidence that had been presented during the guilt phase.

At the close of the punishment phase, the jury was given three general instructions regarding mitigating evidence. First, it was instructed on what constitutes "mitigating evidence."[4] Second—the focus of this appeal—the jury was instructed on the issue of intoxication: "You are instructed that under our law neither intoxication[5] nor temporary insanity of mind caused by intoxication constitute [*sic*] a defense to the commission of a crime. *Evidence of temporary insanity* caused by intoxication may be considered in mitigation of the

---

not knowing that his conduct was wrong, could you consider that—no strike that would you be willing—Let me rephrase that. . . . If the law is that a defendant can introduce evidence of intoxication that causes temporary insanity at punishment on the issue of mitigation, okay, but only if that intoxication results in the condition called temporary insanity which means that they didn't their conduct was wrong—

[Wilson]: Uh-huh.

[Prosecutor]:—can you follow that law?

[Wilson]: Yes.

[Prosecutor]: Okay. And what that means is that if evidence of intoxication was introduced that does not arise to temporary insanity that then it would not be considered as mitigation if it was consideration as mitigation anyhow.

[3] "You are instructed that no act done in a state of insanity can be punished as an offense. It is an affirmative defense to prosecution that, at the time of the conduct charged, the defendant, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a) (West 2013). The jury was further instructed on the meaning of "mental disease or defect": "The term 'mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." *Id.* § 8.01(b).

[4] "You are instructed that the term 'mitigating evidence,' as used herein, means evidence that a juror might regard as reducing the defendant's blameworthiness."

[5] The court further defined "intoxication" and "insanity": "By the term 'intoxication' as used herein is meant a disturbance of mental or physical capacity resulting from the introduction of any substance into the body." "By the term 'insanity' as used herein is meant that as a result of intoxication the defendant did not know his conduct was wrong."

4

penalty, if any, attached to the offense."[6]  Third, the jury was instructed on the issue of temporary insanity.[7]

Additionally, the court told the jury to answer the mitigation special issue: "Taking into consideration *all of the evidence,* including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, do you find that there is sufficient mitigating . . . circumstances to warrant that a sentence of life imprisonment rather than death be imposed?"  Finally, the jury was given a catch-all instruction on mitigation:  "You are to consider *all evidence* submitted to you during the whole trial as to defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty."

At the close of the punishment phase, during his initial closing argument[8] and again on rebuttal,[9] the prosecutor discussed the possibility of Sprouse's intoxication as mitigating.  Defense counsel also discussed that issue

---

[6] At the time, Sprouse objected to this instruction:

The second sentence where it says you are instructed that under our law neither intoxication or [sic] temporary insanity of mind caused by intoxication shall constitute any defense to the commission of a crime.  To the defense that serves no purpose.  It confuses the issues.  The defendant's already been convicted of the crime; and a defense to the crime, whether it's a defense of the crime or not, seems to be irrelevant at this stage.  We'd ask that sentence be taken out completely.

[7] "[I]f you find from the evidence that . . . Sprouse, at the time of the commission of the offense . . . , was laboring under temporary insanity as defined in this charge, then you may take such temporary insanity into consideration in mitigation of the penalty which you attach to the crime."

[8] "No one here can tell you that you must consider anything to be mitigating.  The Judge's instructions have a section that talked about voluntary intoxication and the circumstances under which you may consider that mitigating.  It does not direct you that you must."

[9] "I submit to you if you think a 30-year-old man whose parents have been good to him, who have given him a good home, supported him through high school, through college, tried to get him help, even went to the extent of getting him involuntarily committed in order to get him help, . . . if a man who has all of that advantage spends his life smoking it away with dope, you can consider that mitigation if you choose to."

during closing.[10]  The jury determined (1) there was a probability that Sprouse would commit criminal acts of violence that would constitute a continuing threat to society; and (2) there was not sufficient mitigating circumstances to warrant a life sentence.  In accordance with the verdict, the court sentenced Sprouse to death.

The TCCA affirmed on direct appeal.  *See Sprouse v. State*, No. AP-4933, 2007 WL 283152, at *9 (Tex. Crim. App. Jan. 31, 2007).  In deciding numerous issues raised on state habeas, the state trial court rejected the argument Sprouse presses on appeal,[11] and the TCCA denied Sprouse's application for

---

[10] "You can consider anything on mitigation . . . .  You know you can consider under law intoxication is mitigation.  The law says you can.  You can consider it either way.  You know that.  You've heard it before."

[11] The state trial court's opinion states in relevant part:

42. There was evidence admitted at trial that Applicant was voluntarily intoxicated at the time of the offense.

43. The jury charge at punishment included the mandatory instruction on voluntary intoxication set out in section 8.04 of the Texas Penal Code.

44. Trial counsel objected to the jury instruction on voluntary intoxication in the Court's charge at punishment, stating that the instruction was irrelevant and confused the issues because Applicant had already been convicted.

45. Trial counsel specifically stated that he was not asking the trial court to not give the instruction at all but only objecting to specific parts of the instruction.

46. Defense counsel addressed the voluntary intoxication instruction during closing argument, telling the jury without objection that they could consider intoxication as mitigating.

47. Appellate counsel did not raise any issue regarding the voluntary-intoxication instruction.

48. Neither trial counsel nor appellate performed deficiently in failing to raise such a claim when the issue has been decided against the claim.  *See Drinkard v. Johnson*, 97 F.3d 751, 758 (5th Cir. 1996)[, *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 325 (1997)]; *Cantu v. State*, 939 S.W.2d 627, 647–48 (Tex. Crim. App. 1997).

49. Reviewing the voluntary intoxication instruction in the context of the instructions on special issues as a whole and in light of the proceedings before the jury, there is no reasonable likelihood that the jury applied the instruction to place consideration of non-insane intoxication beyond its effective reach.  *Drinkard*, 97 F.3d at 758–59.

No. 13-70018

writ of habeas corpus. *See Ex parte Sprouse*, No. WR-66950-01, 2010 WL 374959, at \*1 (Tex. Crim. App. Feb. 3, 2010).

Pursuant to 28 U.S.C. § 2254, Sprouse filed the instant petition, which the district court denied but granted a COA on the following issue: "Whether the jury instruction on intoxication during the punishment phase violated the Eighth Amendment, and whether counsel's failure to object or preserve it constituted ineffective assistance of trial counsel and/or appellate counsel."[12]

In determining that reasonable jurists would find that issue debatable, the district court first recognized that Fifth Circuit caselaw foreclosed Sprouse's contention.[13] As the court noted, "[*Narvaiz v. Johnson*, 134 F.3d 688 (5th Cir. 1998),] reasoned that the general instruction to consider 'all of the evidence' admitted at trial negates any inference that the intoxication instruction precludes consideration of non-insane, voluntary intoxication." *Sprouse*, 2013 WL 1285468, at \*23. The district court, however, also observed that (1) *Narvaiz*, *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), and *Lauti v. Johnson*, 102 F.3d 166 (5th Cir. 1996) all predate *Penry II*, and (2) "[*Penry II*] appears to reject the type of reasoning relied upon in *Narvaiz* that a jury can

---

*Ex Parte Sprouse*, No. 26824CR/A, slip op. at 124–25 (40th Dist. Ct., Ellis Cnty., Tex. Jan. 25, 2007).

[12] Sprouse first raised this issue (framed as an Eighth Amendment violation) before the state trial habeas court, which dismissed it on the merits. The record does not, however, make clear whether Sprouse repeated this argument before the TCCA. Because the state does not press procedural default, however, we do not need to determine whether Sprouse did in fact raise it through one complete cycle in the state courts. *Cf. Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004) ("Habeas petitioners must exhaust state remedies by pursuing their claims through *one complete cycle* of either state direct appeal or post-conviction collateral proceedings." (emphasis added)). Even if the TCCA decided this issue on the merits, it did not discuss it at any length, so we treat the state trial habeas court opinion as the relevant state court decision.

[13] *See Sprouse v. Thaler*, No. 3:10-CV-317-P, 2013 WL 1285468, at \*23 (N.D. Tex. Mar. 29, 2013) (citing *Narvaiz v. Johnson*, 134 F.3d 688, 692–94 (5th Cir. 1998); *Lauti v. Johnson*, 102 F.3d 166, 169–70 (5th Cir. 1996)).

logically and ethically follow two conflicting sets of instructions." *Id.*

The district court denied a COA on all other issues raised in the motion. Sprouse appeals the Eighth Amendment issue and seeks COAs on five others.

## II.

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standards to the state court's decision as did the district court." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if the state court adjudicated Sprouse's claim on the merits, federal habeas relief can be granted on that claim only if the adjudication of it

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2012). We consider a state court decision to be "contrary to" clearly established Federal law[14] in two situations: "[(1)] the state court arrives at a conclusion opposite to that reached by this Court on a question of law . . . [or (2)] the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that Supreme Court decision]." *Williams v. Taylor*, 529 U.S. 362, 405

---

[14] "'Clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court reaches its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Therefore, Sprouse must demonstrate that the trial habeas court's opinion was "contrary to" or "an unreasonable application of" the holdings of Supreme Court cases issued before January 25, 2007.

No. 13-70018

(2000). Likewise, we consider a state court decision to be "an unreasonable application" of Supreme Court precedent in three situations:

> [(1)] the state court . . . unreasonably applies [the correct governing legal rule] to the facts of the particular [ ] case . . . [(2)] the state court [] unreasonably extends a legal principle from our precedent to a new context where it should not apply or [(3) the state court] unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407.

Even if a state court errs in applying Supreme Court precedent, the court may still not have acted unreasonably for AEDPA purposes. *See Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] [Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).

Attempting to bypass this deferential standard, Sprouse challenges the constitutionality of § 2254(d).[15] As Sprouse concedes, we, like our sister

---

[15] First, Sprouse argues that AEDPA deference violates the principles of *stare decisis* specified by *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), and *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871): "[C]ontrary to the holdings of *Marbury* and *Klein*, Congress afforded the federal courts habeas jurisdiction, but limited the courts' manner of review by suspending *stare decisis*." Second, Sprouse argues that AEDPA violates Article III: "2554(d) prohibits the federal courts from saying what the law is. Instead, 2254(d) requires the federal courts to defer to and uphold state court decisions erroneously interpreting federal constitutional law."

No. 13-70018

courts,[16] have rejected that challenge.[17]  We therefore apply AEDPA's highly deferential standard to Sprouse's appeal.

## III.

Sprouse maintains that the voluntary-intoxication instruction required by Texas Penal Code § 8.04 unconstitutionally limited the jury's ability to consider mitigating evidence.  Because the instruction could have just stated "Intoxication may be considered in mitigation" as opposed to "Evidence of temporary insanity caused by intoxication may be considered in mitigation," Sprouse contends that "[t]he jury must necessarily have been led to believe that they could not consider intoxication alone for mitigation."  He avers that the negative implication of this instruction trumps or else contradicts the catch-all mitigation instruction and the mitigation special issue.  In this vein, Sprouse urges that the state court unreasonably applied *Penry I*, *Boyde*, and *Penry II*.

## A.

Before specifically addressing Sprouse's position, we turn to the three Supreme Court cases on which he principally relies.  In *Penry I*, the Supreme Court granted the habeas petition, holding that the Texas death-penalty statute had been applied unconstitutionally in that case.  Because the Court was

---

[16] *Evans v. Thompson*, 518 F.3d 1, 10 (1st Cir. 2008); *Crater v. Galaza*, 491 F.3d 1119, 1130 (9th Cir. 2007); *Green v. French*, 143 F.3d 865, 876 (4th Cir. 1998), *abrogated on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000); *Lindh v. Murphy*, 96 F.3d 856, 871–74 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997).

[17] *Cobb v. Thaler*, 682 F.3d 364, 374 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 933 (2013) ("As each circuit to address the question has recognized, § 2254(d)(1) does not intrude on the independent adjudicative authority of the federal courts.  Rather, it limits the grounds on which federal courts may grant the habeas remedy to upset a state conviction.").

reviewing the habeas petition, it began by assessing the clear Supreme Court precedent available to the state court when Penry's conviction became final:

> [I]t was clear from [*Lockett v. Ohio*, 438 U.S. 586 (1978)] and [*Eddings v. Oklahoma*, 455 U.S. 104 (1982)] that a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigate against imposing the death penalty.

*Penry I*, 492 U.S. at 318.

That is, the Eighth Amendment requires that a capital sentencing jury not be precluded from considering, as a mitigating factor, the character and record of the individual defendant and the circumstances of the particular offense. The Court in *Penry I* noted that the jury was not given any specific mitigation instruction,[18] so it could not adequately give effect to any mitigating circumstances it may have found.[19]

At Penry's second sentencing trial, the state court, attempting to abide by *Penry I*, gave a supplemental instruction on mitigation. *Penry II*, 532 U.S. at 789–90. If the jury believed that the mitigating evidence warranted a life

---

[18] *Penry I*, 492 U.S. at 320 ("Although Penry offered mitigating evidence of his mental retardation and abused childhood as the basis for a sentence of life imprisonment rather than death, the jury that sentenced him was only able to express its views on the appropriate sentence by answering three questions: Did Penry act deliberately when he murdered Pamela Carpenter? Is there a probability that he will be dangerous in the future? Did he act unreasonably in response to provocation? The jury was never instructed that it could consider the evidence offered by Penry as mitigating evidence and that it could give mitigating effect to that evidence in imposing sentence.").

[19] *Id.* at 322 ("Penry argues that his mitigating evidence of mental retardation and childhood abuse has relevance to his moral culpability beyond the scope of the special issues, and that the jury was unable to express its "reasoned moral response" to that evidence in determining whether death was the appropriate punishment. We agree. Thus, we reject the State's contrary argument that the jury was able to consider and give effect to all of Penry's mitigating evidence in answering the special issues without any jury instructions on mitigating evidence.").

sentence instead of death, it was directed to make a negative finding to one of the special issues even if it had already answered yes to that question. The mitigation instruction did not include a separate question for the jury.

The Supreme Court first emphasized its holding in *Penry I*:

> *Penry I* did not hold that the mere mention of "mitigating circumstances" to a capital sentencing jury satisfies the Eighth Amendment. Nor does it stand for the proposition that it is constitutionally sufficient to inform the jury that it may "consider" mitigating circumstances in deciding the appropriate sentence. Rather, the key under *Penry I* is that the jury be able to "consider and give effect to [a defendant's mitigating] evidence in imposing sentence."

*Id.* at 797 (quoting *Penry I*, 492 U.S. at 319). Having established that framework, the Court considered two possible ways of interpreting the "confusing instruction" and concluded that neither understanding satisfied its command in *Penry I*: (1) If the instruction was "understood as telling the jurors to take Penry's mitigating evidence into account in determining their truthful answers to each special issue . . . the supplemental instruction placed the jury in no better position than was the jury in *Penry I*." *Id.* at 798. (2) Alternatively, the instruction could be understood "as informing the jury that it could 'simply answer one of the special issues 'no' if it believed that mitigating circumstances made a life sentence . . . appropriate . . . regardless of its initial answers to the questions.'" *Id.* (citations omitted). This approach, however, "made the jury charge as a whole internally contradictory, and placed law-abiding jurors in an impossible situation." *Id.* at 799. Therefore, under either approach, "[a]lthough the supplemental instruction made mention of mitigating evidence, the mechanism it purported to create for the jurors to give effect to that evidence was ineffective and illogical." *Id.* at 804.

Finally, *Boyde* sets the standard for reviewing a claim of jury-charge error: A federal habeas court must ask "whether there is a reasonable

likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde*, 494 U.S. at 380. Two observations underpin that standard: (1) "Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might"; and (2) "Differences among [jurors] in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting." *Id.* at 380–81. Moreover, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 378 (quoting *Boyd v. United States*, 271 U.S. 104, 107 (1926)).

## B.

To obtain relief, Sprouse must establish that the state court *unreasonably* applied *Penry I, Boyde,* and *Penry II*. First, the state court had good reason to distinguish Sprouse's case from *Penry I* and *Penry II*. Unlike the situation in *Penry I*, the state court here instructed the jury with a specific mitigating special issue. And unlike the circumstance in *Penry II*, Sprouse's jury was given a separate special issue, which, as a discrete yes-or-no question, plainly specified the mechanism by which the jury could give effect to any mitigating circumstances it wished to consider. Put otherwise, the fact that Sprouse perceives a negative inference in one sentence of his jury charge does not demonstrate that his jury was confused about, and precluded from following, the comprehensive and catch-all affirmative command to the jury to consider mitigation circumstances.[20] In light of these differences, the state

---

[20] *See Williams v. Norris*, 612 F.3d 941, 956 (8th Cir. 2010) ("*Penry* and [*Mills v. Maryland*, 486 U.S. 367 (1988)] involved juries that were precluded from properly considering mitigating circumstances because of misleading jury instruction forms." (citations omitted)); *see*

court did not act unreasonably in refusing to extend *Penry I* and *Penry II* to this case. Insofar as Sprouse points to *dicta* from those decisions that may suggest reversal, AEDPA directs us to consider only holdings. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Second, Sprouse has not demonstrated that the state court's reliance on precedent was itself unreasonable. Although it is true that *Cantu v. State*, 939 S.W.2d 627 (Tex. Crim. App. 1997), and *Drinkard* preceded *Penry II*, that fact alone does make the state court's reliance unreasonable. For this reliance to be unreasonable, Sprouse would need to demonstrate that *Boyde*, *Penry I*, or *Penry II* squarely establishes a specific legal rule that *Cantu* and *Drinkard* violate.

In *Cantu*, the TCCA assessed the very conflict at issue here: "[The defendant] contends[ ] evidence of intoxication which did not rise to this level was precluded from being afforded mitigating effect in violation of *Eddings v. Oklahoma*, 455 U.S. 104 (1982) and *Lockett v. Ohio*, 438 U.S. 586 (1978)." *Cantu*, 939 S.W.2d at 647. In light of the fact that an unambiguous, separate mitigation catch-all instruction was given, the court rejected the petitioner's arguments: "We hold that the inclusion of the latter instruction satisfied the constitutional deficiency appellant avers was created by the inclusion of the intoxication instruction. Thus, no egregious harm, if any harm at all, can be established." *Id.* at 647–48.

And in *Drinkard*, 97 F.3d at 759, we assessed a similar instruction.[21]

---

*also McCoskey v. Thaler*, 478 F. App'x 143, 150 (5th Cir. 2012) (per curiam) (highlighting *Penry* "Court's concerns about contradiction and limitation").

[21] The instruction in *Drinkard* stated only that "[e]vidence of temporary insanity caused by intoxication may be considered in mitigation of the penalty . . . ." *Drinkard*, 97 F.3d at 755. In contrast, Sprouse's instruction included that sentence but was preceded with the following: "You are instructed that under our law neither intoxication nor temporary

No. 13-70018

The court had given a special instruction addressing temporary insanity caused by intoxication during the punishment phase. *Id.* We determined that the instruction was not *Boyde* error: "[W]e cannot say that there is a reasonable likelihood that the jury interpreted the instructions as precluding the consideration of Drinkard's intoxication if it did not rise to the level of temporary insanity." *Id.*

In both *Cantu* and *Drinkard*, the trial court instructed the jury with a clear, separate mitigation instruction. In neither case was the jury required to take "mitigating evidence into account in determining their truthful answers to each special issue" or "simply [to] answer one of the special issues 'no' if it believed that mitigating circumstances made a life sentence appropriate." *Cantu* and *Drinkard* therefore did not involve juries that were precluded from considering mitigating evidence in the manner at issue in *Penry I* or *Penry II*. Because those decisions do not *necessarily* violate any rule squarely established by *Boyde*, *Penry I*, or *Penry II*, for purposes of AEDPA, the state court's reliance on them was not unreasonable.

Third, other Fifth Circuit cases (not cited by the state court) further demonstrate that the state court's decision was not unreasonable. In *Narvaiz*, 134 F.3d at 692, for example, we addressed an instruction identical to the one here. And there, following *Drinkard*, we rejected the same Eighth Amendment argument Sprouse presses. *See id.* at 694.

Finally, Sprouse maintains that his case can be distinguished from *Drinkard* and *Narvaiz* on three grounds: (1) the additional first sentence given in his case that was not given *Drinkard*; (2) the prosecutor's statements made during *voir dire* to two chosen jurors (which were not made in *Drinkard* or

---

insanity of mind caused by intoxication constitute [*sic*] a defense to the commission of a crime."

15

*Narvaiz*); and (3) the prosecutor's "confusing" closing remarks made in this case (again not made in *Drinkard* or *Narvaiz*). This line of reasoning fails. First, as Sprouse readily concedes, *Narvaiz* included the additional first sentence. Second, as to the *voir dire* and closing remarks, even if Sprouse can show that those considerations constitute proper bases to distinguish *Drinkard* and *Narvaiz*, he has not demonstrated that the state court *unreasonably* applied Supreme Court precedent in failing to distinguish his case on these bases. We therefore conclude that the state court's decision was not an unreasonable application of *Boyde*, *Penry I*, or *Penry II*.

## IV.

Sprouse asks this court to grant COAs on five additional issues: whether trial counsel provided ineffective assistance by failing to challenge (1) the Texas death-penalty statute on the ground that it does not provide for meaningful appellate review; (2) the statutory definition of "mitigating evidence" as unconstitutionally narrow; (3) the statute on the ground that the aggravating factors are vague and do not properly channel the jury's discretion; (4) the statute on the ground that it prohibits informing the jury of the consequences of a "hold out" juror; and (5) the statute on the ground that it does not allocate to the state the burden of proving a lack of mitigating evidence. Because clear Fifth Circuit caselaw forecloses each of these challenges, we do not grant a COA on any of them.

## A.

AEDPA requires a state habeas petitioner to secure a COA before

No. 13-70018

appealing a federal district court's denial of habeas relief.[22]  The petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2) (2012).  For that, he must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Id.*  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that rea-sonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "In assessing whether [a petitioner] is entitled to a COA, we must keep in mind the deference scheme laid out in 28 U.S.C. § 2254(d)."  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).

## B.

As discussed above, Sprouse seeks a COA with regard to five related claims.  In the main, he contends that trial counsel were ineffective because they did not bring various constitutional challenges to Texas's death-penalty scheme.  We take each in turn.

## 1.

Sprouse seeks a COA on whether trial counsel provided ineffective

---

[22] *Adams v. Stephens*, No. 12-11264, 2013 WL 6155603, at *1 (5th Cir. Nov. 25, 2013) (per curiam) (unpublished); 28 U.S.C. § 2253(c)(1)(A) (2012).

assistance of counsel ("IAC") by failing to challenge the statute on the ground that it does not provide for meaningful appellate review on the following three issues: (1) the jury's determination on mitigation; (2) the jury's determination on future dangerousness; and (3) comparative proportionality. In dismissing that argument, the TCCA noted, "[A]ppellant asserts that the death penalty scheme is unconstitutional because it fails to provide to provide a meaningful appellate review of mitigating evidence or a re-weighing of aggravating and mitigating circumstances. . . . The[se] arguments . . . have been previously raised and rejected by this Court."[23]

Applying AEDPA's framework of "contrary to" or "unreasonable application" of Supreme Court law, Sprouse would need to show that the state court either applied the wrong test in deciding this issue or unreasonably applied the correct test to the facts. Sprouse has not pointed to any conflicting Supreme Court precedent, instead conceding that we have rejected similar challenges. *See Martinez v. Johnson*, 255 F.3d 229, 244–45 (5th Cir. 2001) ("We find that the [TCCA] was not objectively unreasonably in its application of the *Jackson* standard."); *Moore*, 225 F.3d at 506–07 ("It is just this narrowly cabined but unbridled discretion to consider any mitigating factors submitted by the defendants and weighed as the jury sees fit that Texas has bestowed upon the jury. In so doing, Texas followed Supreme Court instructions to the letter. No court could find that Texas had acted contrary to federal law as explained by the Supreme Court, and no benefit will arise from further consideration of the obvious."). Therefore, Sprouse has not demonstrated that reasonable jurists would find the district court's determination to be debatable.

---

[23] *Sprouse v. State*, No. AP-74933, 2007 WL 283152, at *8 & n.11 (Tex. Crim. App. Jan. 31, 2007) (citing *Russeau v. State*, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005); *McGinn v. State*, 961 S.W.2d 161, 170 (Tex. Crim. App. 1998); *Ibarra v. State*, 11 S.W.3d 189, 198 (Tex. Crim. App. 1999)).

No. 13-70018

2.

Sprouse seeks a COA on whether trial counsel provided IAC by failing to challenge the statutory definition of "mitigating evidence" as unconstitutionally narrow. In dismissing that claim, the TCCA noted, "[A]ppellant asserts that Article 37.071's definition of mitigating evidence[24] is facially unconstitutional because it limits the Eighth Amendment concept of 'mitigation' to factors that render a capital defendant less morally blameworthy for the commission of a capital murder. We have previously rejected this argument." *Sprouse*, 2007 WL 283152, at \*8 & n.13 (citing *Blue v. State*, 125 S.W.3d 491, 504–05 (Tex. Crim. App. 2003)).

Sprouse points to *Payne v. Tennessee*, 501 U.S. 808 (1991), *Skipper v. South Carolina*, 476 U.S. 1 (1986), and *Eddings v. Oklahoma*, 455 U.S. 104 (1982), contending that the Court has an expansive view of mitigating evidence. As Sprouse concedes, however, we have rejected that challenge. *See Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001) ("[O]ur reading of the statute leads us to conclude that the amended statute does not unconstitutionally preclude[ ] [the jury] from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (citation and internal quotation marks omitted)). Reasonable jurists could not therefore conclude that the state court's opinion was contrary to or an unreasonable application of Supreme Court precedent.

---

[24] *See* TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(f)(4) (West 2013) ("The court shall charge the jury that in answering the issue submitted under Subsection (e) of this article, the jury . . . shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.").

3.

Sprouse seeks a COA on whether trial counsel provided IAC by failing to challenge the Texas death-penalty statute on the ground that the aggravating factors are vague and do not properly channel the jury's discretion. In dismissing that argument, the TCCA noted,

> Appellant argues . . . Article 37.071 is unconstitutional because the aggravating factors used in the statute are vague and do not properly channel the sentencer's discretion. Specifically, appellant asserts that the terms "probability," "criminal acts of violence," and "continuing threat to society" should be defined. This Court has previously decided this claim adversely to appellant.

*Sprouse*, 2007 WL 283152, at *8 & n.14 (citing *Blue*, 125 S.W.3d at 505).

Texas does not run afoul of *Maynard v. Cartwright*, 486 U.S. 356 (1988), or *Godfrey v. Georgia*, 446 U.S. 420 (1980), by not expressly defining these terms. *See Turner v. Quarterman*, 481 F.3d 292, 300 (5th Cir. 2007) ("Because Turner is unable to point to any clearly established federal law under which the terms of the Texas sentencing instructions could be unconstitutionally vague, he is unable to make a substantial showing of the denial of a federal constitutional right, and we deny a COA."); *Hughes v. Johnson*, 191 F.3d 607, 615–16 (5th Cir. 1999) ("We similarly have rejected contentions that 'probability' and other terms included in the statutory special issues are unconstitutionally vague. . . . Hughes has not made a substantial showing of the denial of a constitutional right as to this claim."); *James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993) ("Despite the fact that Texas is a 'non-weighing' state, the terms used in the special issues are not so vague as to require clarifying instructions."). We therefore deny a COA on this issue.

4.

Sprouse seeks a COA on whether trial counsel provided IAC by failing to

challenge the statute on the ground that it prohibits informing the jury of the consequences of a "hold out" juror.  In dismissing that claim, the TCCA noted, "[A]ppellant asserts that the capital-sentencing statute is unconstitutional because it fails to require that jurors be informed that a single holdout juror on any special issue would result in an automatic life sentence.  We have previously decided this issue adversely to appellant." *Sprouse*, 2007 WL 283152, at *9 & n.16 (citing *Russeau v. State*, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005).  Clear Supreme Court and Fifth Circuit precedent forecloses granting a COA on this issue.  *See Druery v. Thaler*, 647 F.3d 535, 542 (5th Cir. 2011) ("To the extent Petitioner's challenge to Texas's 12–10 rule rests on *Mills v. Maryland*, 486 U.S. 367 (1988) and the Eighth Amendment, . . . it is foreclosed by Fifth Circuit precedent."); *see also Jones v. United States*, 527 U.S. 373, 379, 382 (1999).

5.

Sprouse requests a COA on whether trial counsel provided IAC by failing to challenge the statute on the ground that it does not allocate to the state the burden of proving a lack of mitigating evidence.  The TCCA rejected that contention by noting,

> [A]ppellant claims that the mitigation question submitted to the jury pursuant to Article 37.071, section 2(e), is unconstitutional because the statute does not require the State to prove beyond a reasonable doubt that there was insufficient mitigating evidence to support a life sentence.  We have previously rejected this claim and appellant has given us no reason to revisit the issue here.

*Sprouse*, 2007 WL 283152, at *9 & n.20 (citing *Perry v. State*, 158 S.W.3d 438, 446–47 (Tex. Crim. App. 2004)).  Although Sprouse maintains that the state-court opinion runs counter to *Apprendi v. New Jersey*, 520 U.S. 466 (2000), and

*Ring v. Arizona*, 536 U.S. 584 (2002), we have expressly rejected that argument. *See Scheanette v. Quarterman*, 482 F.3d 815, 828 (5th Cir. 2007) ("We have specifically held that the Texas death penalty scheme did not violate either *Apprendi* or *Ring* by failing to require the state to prove beyond a reasonable doubt the absence of mitigating circumstances. In [*Granados v. Quarterman*, 455 F.3d 529, 536 (5th Cir. 2006)], we stated that 'the state was required to prove beyond a reasonable doubt every finding prerequisite to exposing [the defendant] to the maximum penalty of death,' and we concluded that 'a finding of mitigating circumstances reduces a sentence from death, rather than increasing it to death.'"). We decline to grant a COA on this issue.

The judgment denying Sprouse's habeas petition is AFFIRMED. Sprouse's request for COAs on additional issues is DENIED.