# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-70015

FABIAN HERNANDEZ,

> Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

October 29, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No.  3:15-CV-51

Before CLEMENT, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Fabian Hernandez was convicted in Texas state court and sentenced to death for murdering his wife and another man with her. He sought post-conviction relief in state court, alleging numerous points of error. The Texas Court of Criminal Appeals ("TCCA") rejected his claims on their merits. Hernandez then turned to the federal courts. The district court also rejected

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-70015

Hernandez's claims and declined to issue a certificate of appealability ("COA"). He now seeks a COA from this court on two issues: (1) whether his appellate counsel provided ineffective assistance by failing to raise certain arguments on appeal; and (2) whether the district court violated his Fifth and Eighth Amendment rights by ordering him to submit to a comprehensive mental-health exam performed by the State's expert.

Finding no debate over the district court's resolution of these issues, we deny Hernandez's COA requests.

I.

Hernandez's COA requests are governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). We will grant a COA under AEDPA only if Hernandez can make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In a death-penalty case, we resolve any doubts over whether a COA is proper in the petitioner's favor. *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

In deciding Hernandez's COA questions, we must keep in mind the extraordinary deference that AEDPA places around the TCCA's conclusions of law and findings of fact. For it is through this deferential lens that the district court evaluated Hernandez's constitutional claims. Under AEDPA, a federal court cannot grant habeas relief to a state prisoner on any claim adjudicated on its merits by the state habeas court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

2

A decision is contrary to federal law when it either reaches a conclusion opposite to that of the Supreme Court on a question of law, or arrives at an opposite result on facts that are materially indistinguishable from those confronted by a relevant Supreme Court case. *Sprouse v. Stephens*, 748 F.3d 609, 616 (5th Cir. 2014). And a decision involves an unreasonable application of federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. 362, 407–08 (2000)). The state court's decision must not just be wrong; it must be unreasonable—meaning no "fairminded jurist" could possibly agree with it. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

As for the state court's factual findings, they are presumed correct unless rebutted by clear and convincing evidence establishing that the findings are objectively unreasonable. *Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)). To meet this high standard, Hernandez must show that a "'reasonable factfinder *must* conclude' that the state court's determination of the facts was unreasonable." *Blue v. Thaler*, 665 F.3d 647, 655 (5th Cir. 2011) (quoting *Rice v. Collins*, 546 U.S. 333, 341 (2006)). It is not enough that the federal habeas court would have reached a different conclusion in the first instance. *Id.*

## II.

Hernandez contends that his appellate counsel was ineffective by failing to argue that the trial court erred by: (1) ruling in a pretrial hearing that Dr. Coons—the State's mental-health expert—would be allowed to opine on Hernandez's future dangerousness during the punishment phase; and (2) not allowing Dr. AuBuchon—Hernandez's inmate-classification expert—to express a general opinion on Hernandez's future dangerousness to the community.

3

No. 17-70015

To establish an ineffective-assistance-of-counsel claim, Hernandez must clear the high *Strickland* bar—that is, he must prove both that his counsel's performance was deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the appeals context, this means Hernandez must first show that his counsel failed to raise "a particular nonfrivolous issue" that "was clearly stronger than issues counsel did present." *Dorsey v. Stephens*, 720 F.3d 309, 320 (5th Cir. 2013) (quoting *Smith v. Robbins* 528 U.S. 259, 288 (2000)). Counsel is required to raise only "[s]olid, meritorious arguments based on directly controlling precedent." *Id.* (alteration in original) (quoting *United Sates v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003)). Hernandez must then show "a reasonable probability that, but for his counsel's unreasonable failure to [raise an issue], he would have prevailed on his appeal." *Id.* at 321 (alteration in original) (quoting *Smith*, 528 U.S. at 285).

A.

Turning to Hernandez's first claim, we first note that Dr. Coons is a psychiatrist and a lawyer. He has testified numerous times on the subject of future dangerousness in other capital murder trials. In a pretrial hearing, Hernandez argued that Dr. Coons's methodology was unreliable. But the trial court disagreed, holding that Dr. Coons could testify as to Hernandez's future dangerousness during the punishment phase. The State, however, never called him to the stand—largely because Hernandez refused to submit to Dr. Coons's psychiatric examination. On direct appeal, Hernandez's appellate counsel did not challenge the trial court's pretrial ruling.[1]

In his state-habeas case, Hernandez argued that his appellate counsel should have asserted the issue of Dr. Coons's methodology on direct appeal.

---

[1] Before Hernandez's appellate counsel filed his brief, the TCCA held that Dr. Coons's methodology was in fact unreliable. *See Coble v. Texas*, 330 S.W.3d 253, 270–80 (Tex. Crim. App. 2010). But for reasons explained, this does not affect our analysis.

But the TCCA held that because Dr. Coons did not testify, his hypothetical opinion did not contribute to the jury's verdict on Hernandez's future dangerousness. Thus, it denied Hernandez's ineffective-assistance claim since he could not show how this issue would have resulted in reversal on appeal. The district court found that the TCCA properly applied *Strickland*. We agree.

Under Texas law, any error in a pretrial evidentiary ruling is rendered moot if the evidence is never admitted at trial. *See Herron v. Texas*, 86 S.W.3d 621, 628 (Tex. Crim. App. 2002) (declining to reverse the district court even though its ruling on the admissibility of a confession was wrong because the confession was never admitted).[2] This is so even in capital cases. For example, in *Saldano v. Texas*, the defendant wished to call his mental-health expert to testify that he had suffered psychological deterioration while on death row. 232 S.W.3d 77, 82–83 (Tex. Crim. App. 2007). In a pretrial ruling, the trial court held that the defendant could do so only if he first submitted to an examination by the prosecutor's mental-health expert. He refused. *Id.* at 83. On appeal, the defendant attempted to challenge that pretrial ruling, but the TCCA ruled that to be entitled to appellate review, the defendant "was required to submit to the [psychiatric] examination and suffer any actual use by the State of the results of t[he] examination." *Id.* at 90. Without doing so, any appellate review would be "practically impossible" and "wholly speculative." *Id.*

*Herron* and *Saldano* are fatal to Hernandez's claim. Because Dr. Coons never testified, evaluating any harm caused by the trial court's ruling is speculative and not subject to appellate review. If Hernandez wanted to preserve his challenge to Dr. Coons's methodology, then, as in *Saldano*, he was

---

[2] This is also a common principle of federal evidentiary law. *See Luce v. United States*, 469 U.S. 38, 41–43 (1984) (holding that an *in limine* ruling permitting a defendant's impeachment by prior conviction was not reviewable because the defendant never took the stand).

required to submit to the examination and suffer actual prejudice from Dr. Coons's testimony. Because he did not do so, appellate counsel acted reasonably by choosing not to raise the argument on appeal—an argument that would have been frivolous under controlling law.

Thus, we conclude that no reasonable jurist could debate the district court's determination that the TCCA did not unreasonably apply *Strickland* to this claim. A COA is denied.

### B.

Hernandez's second ineffective-assistance claim over the exclusion of Dr. AuBuchon's future-dangerousness opinion fares no better.

During the sentencing phase, Dr. AuBuchon testified for Hernandez. According to the doctor, Hernandez would not be a danger to the prison population because he would be placed in a maximum-security prison unit in segregation detention due to his membership in the Barrio Azteca prison gang. In the segregation unit, he would be isolated from other inmates 24 hours a day. Put simply, prison officials would be able to control him.

At the end of redirect examination, Hernandez's trial attorney asked Dr. AuBuchon if Hernandez would "commit criminal acts of violence that constitute a continuing threat to society." The prosecutor objected, arguing that Dr. AuBuchon was not qualified to give a general opinion on Hernandez's future dangerousness. After voir dire, the trial court sustained the prosecutor's objection. Moving on, Hernandez's trial counsel called Dr. Cunningham, a forensic psychologist who stated that Hernandez had a low probability of committing future acts of violence while in prison.

On direct appeal, Hernandez's appellate counsel did not argue that the trial court should have allowed Dr. AuBuchon to answer the final redirect question. In the state-habeas proceeding, the TCCA held that appellate counsel

No. 17-70015

did not render ineffective assistance by not raising this claim. The district court agreed; as do we.

Two weeks before Hernandez's appellate brief was due, the TCCA, in a separate case, rejected an identical argument to the one Hernandez now argues his appellate counsel should have raised. In *Renteria v. Texas*, the trial court refused to let Dr. AuBuchon testify whether "there was a probability that [the defendant] will commit criminal acts of violence so that he constitutes [a] continuing threat to society in the future." 2011 WL 1734067, at *40 (Tex. Crim. App. 2011) (unpublished) (second alteration in original). Assuming error, the TCCA still found that the trial court's ruling was harmless given the other testimony allowed: Dr. AuBuchon had already stated that he believed the defendant would not be a future danger in prison, and Dr. Cunningham said that "there was 'not a probability' that [the defendant] would commit acts of violence in prison." *Id.*

Hernandez's appellate counsel was also on the appellate team in *Renteria*. Given that fact, it was reasonable for him not to raise the same argument again in Hernandez's case. In both cases, Dr. AuBuchon was allowed to testify that he did not think the defendants would commit acts of violence in prison.  In both cases, the trial court refused to let Dr. AuBuchon opine generally on the defendants' future dangerousness outside of prison. And in both cases, Dr. Cunningham testified that the defendants had a low probability of committing future acts of violence in prison. We rarely see such identical facts.[3]

---

[3] Hernandez argues that *Renteria* should be ignored because it is not precedential. While true, it does not change the fact that his appellate counsel would have reasonably looked to *Renteria* for guidance in deciding which arguments to press on appeal. Appellate counsel could have reasonably concluded that the TCCA would again reject the argument—especially given the close temporal proximity and recurring actors.

No. 17-70015

As with the first ineffective-assistance claim, we hold that no reasonable jurist could debate the district court's conclusion that the TCCA did not unreasonably apply *Strickland* to this claim. A COA is properly denied.

## III.

Hernandez next argues that the trial court violated his Fifth and Eighth Amendment rights by refusing to allow his mental-health expert, Dr. Natalicio, to testify on Hernandez's diminished mental capacity unless he first submitted to an examination performed by the State's mental-health expert, Dr. Coons. Specifically, he takes issue with the trial court's refusal to limit the scope of Dr. Coons's potential examination.

It is well established that when a criminal defendant "neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence," his right against self-incrimination under the Fifth Amendment protects him from a compulsory examination by a hostile psychiatrist. *Estelle v. Smith*, 451 U.S. 454, 468 (1981). But when "a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him." *Kansas v. Cheever*, 571 U.S. 87, 94 (2013). In other words, by relying on the testimony of a mental-health expert who has examined him, the defendant waives his Fifth Amendment privilege. Nonetheless, the scope of that waiver is "limited to the issue raised by the defense," and any testimony about the court-ordered psychiatric evaluation cannot go beyond this limited rebuttal purpose. *Saldano v. Davis*, 701 F. App'x 302, 309–10 (5th Cir. 2017) (per curiam); *see also Cheever*, 571 U.S. at 97 (noting that "'[n]othing' in our precedents 'suggests that a defendant opens the door to the admission of psychiatric evidence on future dangerousness by raising an insanity defense at the guilt stage of the

trial'" (alteration in original) (quoting *Powell v. Texas*, 492 U.S. 680, 685–86 n.3 (1989) (per curiam))).

Hernandez's claim depends on two factual premises. Premise one: Dr. Natalicio's proposed testimony on Hernandez's diminished mental capacity was only relevant to mitigation. Premise two: to form his opinion, Dr. Natalicio did not interview Hernandez; he relied only on the standardized tests he administered and background information gained from others. Based on these factual premises, Hernandez argues that the trial court erred by not similarly limiting the scope and methodology of Dr. Coons's potential examination and allowing a comprehensive exam that could venture into the future-dangerousness issue.

Hernandez's legal conclusion depends on the correctness of the factual premises. But the TCCA rejected both. Because of this, he must show that the TCCA's rejection was not merely wrong, but objectively unreasonable by clear and convincing evidence. This, he fails to do.

By Dr. Natalicio's own testimony, he did far more than administer standardized tests; he interviewed Hernandez over a wide variety of subjects for over seven-and-a-half hours. By his own admission, he was not hired merely to perform an "intellectual assessment." Given these statements, the TCCA's conclusion—that Dr. Natalicio's evaluation was more comprehensive than Hernandez would have us believe—was not unreasonable. Neither was its conclusion that Dr. Natalicio's testimony about Hernandez's diminished mental capacity was relevant not only to mitigation—as Hernandez suggests— but also to the future-dangerousness issue. *See Davis v. Texas*, 313 S.W.3d 317, 352 (2010) (rejecting the "hairsplitting distinction" between the issues of diminished capacity and future dangerousness). For example, a low

No. 17-70015

intelligence level could make Hernandez less likely to carry out a violent plan, or conversely, it could reduce his control over his emotions.[4]

Because these factual findings are reasonable, Hernandez's legal argument fails. If Dr. Natalicio conducted extensive interviews, and if mental capacity is relevant to future dangerousness, then it was reasonable for the TCCA to conclude that the trial court properly refused to limit the scope of Dr. Coons's examination in the manner Hernandez wanted.

Thus, no reasonable jurist could debate that the TCCA's resolution of this claim was reasonable. A COA is denied.

## IV.

For the foregoing reasons, all of Hernandez's COA requests are DENIED.

---

[4] Concluding that a defendant's diminished mental capacity is relevant to future dangerousness could be classified as a legal conclusion, not a factual one. We do not think so. But even if we did, Hernandez has pointed to no Supreme Court case (and we could not find one) holding that diminished capacity is not related to future dangerousness. Thus, treating diminished capacity as relevant to future dangerousness is not contrary to, nor an unreasonable application of, federal law.